Good morning, Your Honors. If it may please the Court, my name is Sue Han-Wang, appearing on behalf of Plaintiff Appellant Adonai El-Shaddai. You know, you have quite a few issues here. We do. Each of which I think is a serious issue. And I just hope we can structure this argument in a way that we don't consume all your time on one of the questions or two of the questions, because I hope you'll try to do it in a way, if we let you, where you'll cover all of your issues. Absolutely. El-Shaddai faced a series of prejudicial errors before and during trial. First, the district court judge gave a jury instruction that was based on an incorrect and erroneous application of the law, and this instruction prejudiced El-Shaddai. The district court at trial stated that in light of Heck v. Humphrey, an instruction was needed, and the instruction that she gave was that it is established that El-Shaddai resisted and that he is disciplined in resistance. This instruction not only was erroneous, but it was prejudicial. El-Shaddai made it clear several times at trial that he did not believe that Heck applied to his case. He made that argument when the district court proposed the instruction in light of Heck, and he even made that argument when he objected to Defendant's Rule 50 motion. He explained several times that Heck did not apply to this case, and therefore, the jury instruction was not necessary. The district court was aware of his position, but she gave the instruction anyways, and this instruction prejudiced El-Shaddai in two significant ways. First, it damaged his credibility. As El-Shaddai had explained, credibility was the basis of this case. It was his word versus the defendant's words. And at trial, El-Shaddai testified that he did not resist. In fact, that's what he said. I mean, I guess there's kind of a verbal dispute about what resist means, so that i.e., at some point the government seems to say, well, just not following an order is resisting, and therefore, what he said was resisting. But there was a conflict in the testimony as to what actually happened, right, whether he was aggressive and whether he kicked him and stuff like that. So does it – does this sort of turn on what the jury would think resist means? It does, in part. As you pointed out, there was a dispute during trial as to what exactly happened and what resistance is. At trial, defense counsel acknowledged that El-Shaddai had only put on evidence that he did not resist, that he had denied resisting in her cross-examination questions. To then turn around and tell the jury, to give the jury an instruction that it is established that El-Shaddai resisted was highly prejudicial. In the context of El-Shaddai's testimony and in context of the elements of an excessive force claim, it was highly suggested to the jury that the resistance was physical. For example, in the excessive force instruction, the jury is told to consider factors such as the need to restore or maintain discipline, the – whether there was a reasonably perceived threat of harm, and the extent of any injury suffered. To immediately follow those instructions with another addition, with an instruction from the court telling the jury that it is established that El-Shaddai resisted and that he was disciplined for this resistance, is highly suggestive that the resistance was physical. And this instruction did not allow the jury to make that determination on their own whether – what the resistance was and what type it was. And as this Court has recognized in Galdamez v. Potter and Hunter v. Sacramento, a jury instruction is erroneous and harmful where it suggests to the jury not to consider certain claims or to ignore certain evidence. And that's exactly what this jury instruction did. El-Shaddai made his argument clear that heck did not apply. He made it clear several times, and the district court gave it anyways. This instruction harmed him, destroyed his credibility, and moreover, it suggested to the jury that any use of force was reasonable, that any use of force was in response to El-Shaddai's resistance, that there was perhaps a reasonably perceived threat of harm and that this use of force was necessary to restore, maintain discipline. That invaded the province of the jury, which the district court recognized was a problem with this jury instruction. And El-Shaddai was prejudiced by this instruction. This error was further compounded by the exclusion of El-Shaddai's inmate eyewitness testimony. The exclusion of what? The exclusion of his inmate eyewitnesses at trial. The only witnesses. His only witnesses. Right. His only witnesses were inmate eyewitnesses. That's correct. The district court abused her destruction when she strictly enforced the procedures of the magistrate judge and denied El-Shaddai's writ without considering the Wiggins factors. El-Shaddai believed that the only way for him to secure the witnesses at trial was to file a petition for writ of habeas corpus in his condom. El-Shaddai had explained to the district to the magistrate judge that he was unable to comply with the procedures set forth in the discovery order. I gather there is some dispute about when he said that and whether it makes a difference when he said that. Does it make a difference? When did he say that? El-Shaddai made that statement in his motion for appointment of counsel. The first time or the second time? The first time. Before the magistrate judge? Before the magistrate judge. That's correct. Let me describe a timeline of a few of the key events to clarify this question. In February of 2010, in defendant's pretrial statement, they stated that El-Shaddai's disclosure of inmate witnesses was improper because he had failed to list the current address of the inmate witnesses. El-Shaddai knew he couldn't research and investigate the current address of the inmate location of the inmate witnesses. And he filed his motion for appointment of counsel and it specifically addressed that inability. On pages 222 and 224, El-Shaddai explained in his motion for appointment of counsel that he was unable to comply with the court's procedures. He had been transferred to a different institution and had no way of locating where those inmates were. El-Shaddai filed his motion for appointment of counsel in September of 2010. The magistrate judge, five days later, denied his motion for counsel. And in October 13, El-Shaddai filed his writ, his petition for a writ. Because at that point, his motion for counsel had been denied. He had no way of investigating the location of these witnesses on his own. At that point, the only thing he could file, the only thing at his disposal, was the petition for a writ. El-Shaddai filed that in October of 2010. He did not learn conclusively that his inmate witnesses would not be brought to trial until two weeks before trial. That entire time, El-Shaddai had no idea that his inmate witnesses would be excluded. In fact, during that time period between October 2010 when he filed his writ and when Judge Mueller finally ruled that he would not be allowed to bring his inmate witnesses, his own petition to bring himself to trial had been granted. He had been given no indication that his request for inmate witnesses would be denied. Ginsburg. At some point, there was a pretrial order. And that is that pretrial order that he was said to not comply with, right? When was that? The pretrial order was, I believe, in around August of 2010. El-Shaddai, after El-Shaddai filed his petition for writ, the magistrate judge did issue an order to show cause, and there she explained that he hadn't complied with the pretrial order procedures to secure inmate witnesses. El-Shaddai filed a response to the order to show cause where he explained that he was What was the writ? The writ to whom? The writ to bring the inmate witnesses at trial. I see. And then if you look down through the docket, in closer to trial, at July 20th, 2011, there was a trial confirmation hearing with Judge Mueller. And at that trial confirmation hearing, El-Shaddai expressed his frustration, his confusion with the procedures, and again requested subpoenas for the incarcerated witnesses. A week after that trial confirmation hearing, the magistrate judge issued the amended pretrial order. And in that amended pretrial order was the first time that anyone had said anything about El-Shaddai's writ. The amended pretrial order, which was issued on July 27th, 2011, did state that due to his lack of compliance with the procedures set forth by the court, the writ was being denied. But the magistrate judge explicitly noted that the district court judge, Judge Mueller, retained discretion to visit the issue. And Judge Mueller did. In August of 2011, Judge Mueller issued her trial confirmation order. And there she explained that she was taking the request for subpoenas for the incarcerated witnesses under submission. In fact, she stated that she was confirming the amended order only in part. She did not confirm the portion of the amended pretrial order related to the inmate witnesses because Judge Mueller was taking that under consideration. And then she did grant counsel when, in August 2011? At the trial confirmation hearing, she acknowledged that he needed counsel. And in her trial confirmation order, she noted that she had directed the court to pro bono coordinate her to make an attempt for counsel. That was in August 2011? Yes. At trial again. Pardon? At trial again. On October 3rd, 2011. Elshadai did not learn that his witnesses were denied until September 21st, when Judge Mueller issued an order stating that she was reconfirming the amended pretrial order and denying the inmate witnesses. So between October 2011 and September 21st, 2011, Elshadai had no idea that his inmates would not be brought to trial. That's why on the first day of trial, the first issue that Elshadai raised was the question of his inmate witnesses. And while Judge Mueller denied what she construed as his motion for reconsideration, she did acknowledge that his record was made. Here, Elshadai did the only thing that he could. He believed that he could not comply with the procedures to bring the district court procedures because he could not locate the inmate witnesses. He had been transferred. And as an incarcerated pro se plaintiff, he had no ability on his own to investigate or research where his inmates were located. The district court denied his writ without applying the Wiggins factors and only denied it based on his failure to comply. I think, as I understand it, what he was said not to have done was to file an affidavit that they would testify voluntarily and what they would say. And I guess the government's going to say, because this is what they said in their briefs, well, he could have filed the declaration himself. I think Elshadai believed that he couldn't. He believed that he had to first contact the inmate witnesses before he could describe when and where the inmate witnesses agree that they would testify voluntarily at trial. The affidavit contains more than simply a statement of what the inmates would testify  He had to do that. Kagan in other words, how is he to know if they would testify voluntarily if he couldn't contact them? Pardon? How is he to know if they would testify voluntarily? Even though they had said a couple years before that they would testify, that doesn't mean they would actually testify at a Federal trial. No. It doesn't mean that they would testify voluntarily, but there's no requirement that an incarcerated witness be testified voluntarily before the court can issue a writ. A court can issue a writ. But there are two different questions. One is that the requirement, and two, was it reasonable to expect him to comply? He would have had to contact these witnesses. Did he know where they were? He did not know where they were. He had been transferred to a different institution. But he would have had to contact, get a statement from them, and then file his affidavit that they had told him that they were willing to testify and what their contents of the testimony would be. Yes. That appears to be what else I believe he had to do. What is that rule? Is that Judge Mueller's rule or is that a standard rule in Sacramento, or do you have any idea? It appears to be a procedure used in the Eastern District, at least by this magistrate judge. I know it's not a standard procedure in all districts. For example, in the Senate district. No, no. Well, Sacramento has most of the prisoner cases. I believe so. And, you know, it's a burden on them. But the question I was asking was, it may not matter, but whether Judge Mueller or the magistrate had developed this procedure or whether it was a standard procedure in Sacramento. It may be a standard procedure in Sacramento. I'm not clear as to who gave it. Okay. All right. As I said, that may not be relevant. Counsel, Judge Gould, if I could ask you a question, please. Yes. If we were to reverse on the jury instruction, does Mr. Wilkerson have counsel now appointed? He would, Your Honor. We would represent him on remand so that we could help him adequately oppose summary judgment and help him appropriately secure the testimony of his inmate witnesses and to appropriately list any evidence that was needed for trial. If there are no further questions at this time. I would like to ask you a question about that. How did we get you? Did we appoint you? We were court-appointed counsel for purposes of appeal, but we are willing to also represent him at trial. Are you with the firm? We are. I am with the firm, yes. What's the name of the firm? Morrison and Forster. Oh, that's one of the smaller firms. All right. Thank you very much. Thank you, Your Honor. Are you persuaded? No, Your Honor. May it please the Court, my name is Jamie Ganson, and I represent the correctional officials Albonaco, Turner, and Wheeler in this action. Mr. Wilkerson failed to demonstrate at trial that the force used against him was excessive, was improperly motivated, or caused him any significant injury. Is that the issue? He had an excessive force claim and a retaliation. I understand that, but we have all kinds of procedural problems. Your Honor, he's arguing that a series of errors impaired his ability to present his case. Excuse me. But the record shows that Judge Mueller repeatedly gave Mr. Wilkerson leeway, more than he was entitled to, more than he was required to give, and he continuously failed the instruction. Yes, Your Honor. The jury instruction here reads, additionally, it is established that plaintiff resisted Defendant Wheeler and that plaintiff was disciplined by prison officials for that resistance. Plaintiff does not seek to expunge the disciplinary record and you are directed to assume that the disciplinary record will remain unchanged. Why? Why? I mean, where does that come from? It's hard to know where to start with what's wrong with the instruction. Well, Your Honors, the instruction was factually accurate. Not only did it mirror Mr. Wilkerson's testimony, but Judge Mueller also reviewed it explicitly with him. And she said, it's not disputed that you resisted, that you incurred a disciplinary and also that you are not seeking to expunge the disciplinariness actually. But he disputed what he did, right? I.e., whether he kicked them, whether he physically resisted them and so on. And so as to what the jury was likely to understand and what, for example, the disciplinary findings were, which was that he kicked them and that he pulled away and so on, there was a dispute. There was a direct dispute. There was a direct dispute as to whether the resistance that he put up was physical or was disobeying a direct order. What resistance means? You know, normally you explain to a jury what terms mean. In some circumstances, resisted would not mean standing there and not doing something. If a police officer tells you to move, are you resisting when you don't move? You know, these are questions that should be explained rather than it was one of the questions reserved in the pretrial statement. You know, did he resist? Well, what does resist mean? Your Honor? What does a jury think when you have testimony that somebody engaged in physical resistance and there's a dispute about that? Does the jury know that failure to comply with an order is resistance for legal purposes in this case? They do, Your Honor. First of all, resistance has its common everyday meaning. And resisting, one way we often use resisting is to say resist temptation. If I tell you to stop talking and you don't, is that resistance? I believe if you ordered me to stop talking and I don't obey that order, I'm resisting that order. Yes, Your Honor. And Mr. Wilk, you see the point. I wouldn't convict you if you just kept talking. Well, this is a different situation. This is prison. Plus, this is all as a setup to whether there was excessive force. Yes. I presume we couldn't go in and tackle you because you didn't listen. Actually, Your Honor, the officers testified, both uncontroverted testimony, that they are authorized to use force to gain compliance with the lawful order.  Is it relevant to how much force? As much as is necessary. And again, the amount of force is at issue here. However, Mr. Wilkerson testified explicitly that when directed to leave the library, he instead turned around, walked away from the officer and continued to speak to people and write things down. He conceded. For example, this instruction says that the disciplinary grievance found that he had resisted and it wasn't being disputed. And as I understand it, disciplinary grievance says that Officer Wheeler, Inmate Wheeler, let's see, began to kick his legs and be resistive. So was they being told that he in fact kicked his legs and was resistive in that way? Yes, they were. There was testimony both that he physically resisted from the officers and there was testimony that he resisted the order. I'm sorry. Did he testify that he kicked his legs? Was that undisputed? Was that undisputed fact? No, Your Honor. All right. But they were told that it was. No, they weren't. They were told that the disciplinary findings were not being contested. However, what Mr. Wilkerson testified to was that the chief disciplinary officer specifically stated that when he turned or walked away, based on that, my admission of me stating I was not leaving without my legal material and turning and walking away, and he continues on, that statement was an indication that I resisted. And Judge Mueller said, you concede that? And Mr. Wilkerson responded, I concede that. It was a fact that was conceded in court. But he was said to have conceded what the disciplinary findings were. They were also, for example, that Wheeler in an attempt to break free from Officer Wheeler, that Wilkerson attempted to break free from Officer Wheeler's control. Was that contested? Yes, Your Honor, it was. All right. But it's in the disciplinary findings. And they were told that those were being accepted. And they weren't. There were many disciplinary findings also with his disobeying a direct order. And the jury, it's up to the jury to determine whether he had physically resisted or not. But what was at issue here was that the disciplinary action had already been challenged in State court, had not been overturned, and Mr. Wilkerson was not entitled to contest it here. So the jury instruction here was both factually and legally accurate. And he conceded repeatedly to the content of the jury instruction. Not only did he not object, but he conceded repeatedly when given a chance to address it that the content was accurate. And he was given two additional opportunities to challenge it. And both times when asked is there anything else about the proposed language, is there anything else about the jury instructions, Mr. Wilkerson responded no. You know, maybe you're making a good argument for why he should have had a lawyer and why if there's a retrial we're lucky to have Morrison and Forrester. I mean, how does he know what to do about jury instructions and what resistance means? You know, I understand the system, but this certainly explains to you why it's not very satisfactory to have this kind of a trial with these kinds of objections and presumed knowledge about jury instructions. It's not, you know, the system's the system. But it also explains why on a retrial, if there is one, we'll have a better chance of getting a fair result with Morrison and Forrester there. I don't believe the result was unfair, Your Honor. Mr. Wilkerson is extremely articulate. He was able to make his position. And he was able to explain to the judge that the reason that he was No, he didn't manage to explain to the judge why a trial without any of his witnesses isn't a very fair trial. Well, Your Honor, that is not due to a misstep by the judge. Judge Mueller gave him abundant opportunities. In 2000 How was he supposed to get an affidavit from these other prisoners and get the information from them and put them in his affidavit when he didn't even know where they were? Well, first of all, Your Honor, the jury instruction, excuse me, not the jury instruction, the instruction of what is required to produce the witnesses is standard. Not word for word, but the Eastern Jurisprudence does use it throughout their prisoner litigation cases. It was provided to him in 2008. In 2010, he filed his pretrial statement without meeting that standard. Nine months later, again, in his motion for counsel, he addressed it. But Judge Mueller handles hundreds of cases and can't be expected to ferret out his motion and apply them to the other. He never responded to her numerous direct orders by either making the showing required or showing cause. He had an alternate. In 2010, he filed the petition for the witnesses. It did not comply with the Court's directive, and the Court immediately reiterated the requirements and directed him to show cause or file a motion satisfying the requirements. His November 2010 response contained no further information, and he actually chose to stand on his prior showing, which the Court had already informed him was deficient, and argue that all he had to do was at trial be prepared to introduce witness testimony. That was not the test. He then sought additional time, which Judge Mueller granted him, to supplement his pleadings, his response to give cause, and he never supplemented. In his trial brief, again, he listed the incarceration. The Magistrate judge and Judge Mueller at some relevant time that he had been transferred and he didn't know where these people were. He did in his motion for counsel. However, his transfer was No, Your Honor. His counsel was Excuse me. His transfer was in July 2010, seven months after he had filed his pretrial statement, and never once in the course of this action did he show cause by showing that he had done anything at all to secure the witnesses from the four years earlier when he was told from the four years the case had been going, the two years that he had been told of the standard. He never showed any effort to show that he had done anything to try to locate these witnesses at the time when he was housed with them or any other time. Moreover, all he had to do was make an affidavit of his own to say these are the facts I know. And at trial on the morning of trial for the first time, he claimed that two of the witnesses had agreed to testify voluntarily. He never explained why he didn't earlier provide that information to the court. I thought they had said at the time of the incident that they would testify, but not in the last four years. That was the first time he had ever said anything about them being willing to testify voluntarily. I thought that was in the petition itself. No, Your Honor. It was on the morning of trial when he first said Alexander and Session had agreed to testify. The other issue is that there isn't really evidence that any of these seven witnesses saw anything that would have furthered. Well, the evidence in the record is that they saw the discussion. They turned around and momentarily, and the next thing was they saw Mr. Wilkerson on the floor. Now, that may not prove anything in itself, but with the testimony from Mr. Wilkerson, testimony on the other side, this testimony may be drawn, inferences may be drawn by the jury that this supports Mr. Wilkerson's claim. However, Your Honor, even at the information at disciplinary hearing, not one of the seven inmates reported any excessive use of force. No, they reported that they were there when there was a conversation, and the next thing they saw was Mr. Wilkerson on the floor. That's what they said, and that certainly is relevant to what happened in that incident. Your Honor, two of the inmates, of the three inmates that reported anything in the disciplinary hearing, there were only three that reported any facts in the disciplinary hearing, two of them expressly conceded that they were not looking when the use of force began, and two others, excuse me, one, Alexander and Session both said they weren't looking until after Wilkerson was on the ground. Session and Thomas. He didn't say I wasn't looking. He said I turned around for a second, and the next thing I knew, Wilkerson was on the ground. And yet none of them reported any use of force that was excessive. In addition, two of them reported that Wheeler repeatedly argued with the guards and refused the direct order to leave the library, which cuts against Mr. Wilkerson's testimony, not for it. I'm not suggesting that all seven witnesses would have supported him. If they cut against him, as they should have called him, but at least some of the witnesses on the list did, were there, turned around, and the next thing they knew, he was on the ground. Now, that is relevant testimony because you can draw inferences from it. It may not be persuasive to a jury. But when an incident goes on and there are several eyewitnesses to it, it's difficult to understand that they are not the recipient witnesses and they missed by turning around for a second exactly what happened. It sheds light on the incident. And that was in the record. And the Court knew that that's what those witnesses, that they were relevant. They weren't just people he picked out who were, you know, 500 yards away. Your Honor, I don't believe that was clear in the record because Mr. Wilkerson never produced it to the Court when he was required to give that information to the Court. Except the record 275 are the description by the State of what the witnesses observed. Based on the disciplinary order, not based on any information that Mr. Wilkerson provided the Court when he was required to do so. Does it matter who provided it, if the record shows? It didn't show at the time. Would you let me finish the sentence? I apologize, Your Honor. Thank you. Otherwise, who knows? You may be resisting. These are questions and answers of the witnesses by the State, which are at page ER-275. Your Honor, those were included in the disciplinary report. They were not part of any showing that Mr. Wilkerson made to the judge when he was required to do so. District courts have broad discretion to exclude witnesses for failure to comply with pretrial orders, and Judge Mueller acted well within her discretion here. She gave him multiple opportunities. All he had to do was show cause by responding to the order explaining why he could not comply, and he didn't do that. Let me go back for a moment to the instruction, and I'm sorry for doing this. Sure. Judge Mueller did not give that instruction. She gave the instruction on erroneous understanding. She was wrong. In other words, she did not give the instruction on the understanding that he was resisting because he simply by not following the order. She gave the order, the instruction, because she thought there was a Heck v. Humphrey problem here, even though she was told by the State lawyer that there was a problem with doing that. Two of the things, Your Honor. First of all, the instruction was motivated by Heck v. Humphrey. However, the instruction contains no erroneous rule of law. It only contains facts. That's not what I'm asking. Okay. Because, I mean, this goes, it seems to me, to the question of would she have given that instruction in that line. I mean, what possible reason there would be for giving such an instruction if there wasn't, in fact, a Heck v. Humphrey? It's still taking something from the jury. Right. So you're essentially making a harmless error argument. I mean, no one would give that instruction. I mean, you just don't give instructions saying that things are conceded. I mean, what point is that? Well, there had been testimony about the disciplinary action. Mr. Wilkerson had admitted that he had a disciplinary action, but the disciplinary action meant that he had done something wrong and that he hadn't overturned it. So Judge Mueller's instruction also did clarify that in finding for Mr. Wilkerson the civil action, that that would not go against that disciplinary action. All right. Thank you, counsel. Thank you, Your Honor. All right. We'll give you a minute for rebuttal. Thank you, Your Honor. I'd like to briefly respond to the discussion of when Elshadai was transferred and his inability to contact the witnesses. If you look at the docket for the case on ER pages 290 and 291, entries 24 and 30 show that in two times in 2008 Elshadai was transferred to different locations. In fact, the transfer happened before the discovery and scheduling order had been issued. So by the time that he had received the directions on how to properly secure the Next, Elshadai did not receive multiple chances from Judge Mueller to respond or submit affidavits. He was – he received an order to show cause from the magistrate judge. That happened in 2010. He responded, and then there was silence. He did not hear anything else about his inmate witnesses until shortly before trial. He was denied two weeks before trial, and that was the first issue that he brought up on the first day of trial. And his response to the order to show cause was to ask for counsel. He filed the motion for counsel prior to the order to show cause. So what was his response on the order to show cause? Did he say, I can't contact these people because I – Elshadai believed that his writ had satisfied the requirements of what he needed to do, and given that it was the only thing he could file, he stood on his writ. He did stand behind it and continued to pursue it. He filed the motions for appointment of counsel in September, and then after that was denied, he subsequently filed the motion for a writ. Turning really briefly to the rules violation report, Elshadai did not – Elshadai actually objected when he was being cross-examined by defense counsel when she brought up the rules disciplinary report. He – he objected on pages 100 – or, excuse me, 95 to 96 when she tried to ask him questions about it. He explained that the rules violation report wasn't relevant to this current case. He wasn't challenging the outcome of the rules disciplinary report. What he was challenging was the excessive use of force by defendants against him. Because of the erosion – Sotomayor, counsel, Judge Gould, if I could ask you a question. And you're already over your extended time. But since several panel members were obviously interested in it from argument, could you just address in 30 seconds your response to the arguments made by the government that the instruction – given the instruction was a harmless error, that it didn't cause any problem? Because unless I'm mistaken, if we conclude the instruction was improper, it's got to go back. And we don't really have to reach a lot of these other issues. I agree. The error was harmless. Elshadai testified on stand that he did not resist. He testified that he never refused to leave the library. What he did was he went back to where the librarian was standing so he could pick up his legal copies so that he could leave. He makes those statements on pages 94 and 95 of the record. In the context of his testimony and in the context of the excessive force jury instruction, where the jury is told to consider the need to use force, the need to restore discipline, any threat Elshadai posed, turning around and telling the jury that resistance was – that it is established that he resisted and that he was disciplined for the resistance is highly prejudicial. It tells the jury that resistance was physical and that harm – that any use of force was reasonable, was needed, and that there was a threat of harm. Elshadai was prejudiced by this. And for that reason, we requestfully ask for vacate and remand. Thank you. Thank you. The case is arguably submitted.
judges: REINHARDT, GOULD, BERZON